IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

LEONEL MARIN-TORRES,

        Defendant.

No. 3:14-cr-00386-HZ-1
No. 3:20-cv-02014-HZ

OPINION & ORDER

Gregory R. Nyhus
United States Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204

        Attorneys for Plaintiff

1 – OPINION & ORDER

Leonel Marin-Torres
36048-086
USP FLORENCE - HIGH
US Penitentiary
Inmate Mail/Parcels
P.O. Box 7000
Florence, CO 81226

      Pro se Defendant

HERNÁNDEZ, District Judge:

Defendant Leonel M filed an amended motion for relief from his judgment of conviction under 28 U.S.C. § 2255. The Court denies Defendant's motion.

## BACKGROUND

A grand jury indicted Defendant for Assault of Officer in September 2014. Indictment 1, ECF 1.[1] The grand jury found that Defendant pushed, shoved, struck, and scratched a Columbia County Deputy Sheriff who was assisting under contract with the United States Marshal to perform the Marshal's duties as custodian of federal prisoners. *Id.* Defendant pleaded not guilty and proceeded to trial. On the first day of trial, Defendant represented himself and was accompanied by standby counsel David Audet, investigator Courtney Withycombe, and two interpreters. Trial Tr. 2, ECF 116. Before the jury venire was brought to the courtroom, the Court went on the record with the parties. The Court observed that Defendant was dressed in clothing provided by the jail. *Id.* at 5. When Defendant conveyed that he did not wish to wear jail clothing for his trial, the Court advised that it would get Defendant different clothes. *Id.*

Immediately, Defendant began to interrupt the proceedings and speak in profane and vulgar terms. While discussing motions that he had filed in the case, one of which was a motion

---

[1] Citations to ECF numbers in this Opinion refer to ECF numbers in Case No. 3:14-cr-00386-HZ.

to continue the trial, Defendant asserted that appointing standby counsel to assist him amounted to "rape" of his constitutional rights, complained that Multnomah County jail took his legal paperwork from him, and complained that Multnomah County jail would not allow him to make copies. *Id.* at 5–10. He began to yell at the Court and called the officer he was accused of assaulting a criminal. *Id.* at 11. Several times, the Court directed Defendant to stop yelling, interrupting, and being disrespectful. *Id.* at 11–12.

The Court then explained that the request to continue the trial was denied and warned Defendant that if he continued to interrupt the Court and yell at the Court and others in the courtroom, then the Court would assume that Defendant was waiving his right to be present at his trial. *Id.* at 15. Defendant interrupted, yelling again and stating that he wanted to be present for his entire trial. *Id.* Once more, the Court warned Defendant that if he continued to yell and interrupt the proceedings, he would be removed from the courtroom and permitted to watch the proceedings from another room. *Id.* at 16. The Court advised that if at any time he wanted to return and behave appropriately, he could return to the courtroom. *Id.* The Court again offered Defendant a chance to change into street clothing before trial began. *Id.* Defendant told the Court that the Court does not care that transcripts were taken from him, that he has evidence, or that the Court blocked him from making copies at the jail. Defendant then accused the Court of violating his constitutional rights by telling him to sit down and stop yelling. *Id.* at 18–19.

When the Court announced that the trial would begin and asked the courtroom deputy to bring the jury in, Defendant said, "Don't bring me here anymore. Okay, do the trial. Okay. Do it. Do it." *Id.* at 19. When the Court inquired whether Defendant was voluntarily giving up his right to be present at his trial, Defendant replied, "You have no shame, buddy. You've got no shame."

*Id.* at 20. Defendant then left the courtroom. *Id.* After Defendant left the courtroom, the Court described Defendant's demeanor for the record:

> The record should reflect Mr. Marin-Torres has been removed from the courtroom. He was yelling, agitated, shaking. The marshals were concerned. I was concerned. I told him that we would continue and proceed in the trial without him, that he could watch the trial from another room; and when he was ready to participate, if he wanted to participate, he could return to the courtroom at any time, but he needed to behave himself.
>
> He has chosen, in my opinion, to be completely agitated. He is out of control. He's yelling at the Court. He is completely disrespectful. And he has chosen to absent himself from the proceeding.

*Id.* The Court took a recess and set up an empty courtroom for Defendant to view the proceedings from. *Id.* at 21. The Court instructed the interpreter to join Defendant in the empty courtroom and instructed Mr. Audet, Defendant's standby counsel, to deliver whatever materials he had to Defendant. *Id.* The Assistant United States Attorney provided a copy of the grand jury transcript to Defendant's standby counsel to provide to Defendant. *Id.*

After the recess, Defendant returned to the trial courtroom in jail clothing. *Id.* at 22. The jurors were not present. Defendant said he did not want to proceed in jail clothing and that he did not bring any documents to prepare for cross-examinations. *Id.* He said he was prepared to argue motions, not to conduct trial, and asked that the trial be continued until the following day. *Id.* Defendant said that the Court had not called Multnomah County yet and conveyed his belief that wrongdoing was occurring. *Id.* at 23. He then described the evidence that he needed for impeachment purposes but did not bring with him. *Id.* Next, he complained that he was unable to take notes when his standby counsel brought discovery documents for him to review and that he did not want standby counsel or the investigator to help him. *Id.* at 25–26. The Court told Defendant that other clothing had been made available for him to wear, and Defendant said that it was not the clothing he wanted. *Id.* at 24. Over Defendant's continued interruptions, the Court

4 – OPINION & ORDER

admonished Defendant again that if he continued to yell and be disrespectful, then the Court would remove him from the courtroom and find that he waived his right to self-representation and to be present at trial. *Id.* at 26–27. Defendant continued to interrupt, argue with the Court, and describe difficulties he experienced with reviewing evidence subject to a protective order. *Id.* at 30–32.

      Defendant continued to argue with the Court until the jury began to enter the room. When the jury had entered, Defendant began to object and argue that the Court had prejudiced the jury against him by allowing the jury to see Defendant in jail clothing. *Id.* at 34. The Court instructed him to stop speaking and Defendant continued, accusing the Court of raping his constitutional rights. *Id.* at 35. The Court asked the courtroom deputy to remove the jury venire from the courtroom and warned Defendant again that he would be removed from the courtroom if he continued. *Id.* Defendant called the Court corrupt as the jury venire left the courtroom. *Id.* Defendant continued to interrupt and yell at the Court. *Id.* at 37–38. The jury venire returned to the courtroom to begin jury selection. As the Court gave the jury venire an introduction to the proceedings, Defendant interrupted to object that the venire did not include any African American prospective jurors, accused the Court of using a jury that "has been here other times" and raping the constitution, and called the Court a traitor. *Id*. at 40–41.

      The Court then removed Defendant from the courtroom and instructed Defendant's standby counsel to represent Defendant throughout the remainder of the trial. *Id.* at 41, 44. After jury selection was completed, the Court returned Defendant to the courtroom to ask whether he wanted to testify on his own behalf. *Id.* at 95. Defendant responded that if the Court would not permit him to represent himself, he did not want to attend and would prefer to return to the jail. *Id.* He said that he did not want to testify, he did not want to watch the proceedings from another

5 – OPINION & ORDER

location, and he wanted to return to the jail. *Id*. at 95–96. He said he did not feel well because he was on a hunger strike. *Id.* at 95. The Court returned Defendant to the Multnomah County jail and proceeded with trial. On the second day of trial, the Court confirmed with the United States Marshal's office that Defendant told the Marshal that he did not want to return to the Court on the second day of trial to participate in his case. Trial Tr. 23, ECF 117. The Marshal brought Defendant to the Court and held him at the Court in case he changed his mind and decided to view or participate in the trial. *Id.* He did not participate. *Id.*

The jury found Defendant guilty of assaulting an officer. Jury Verdict, ECF 93. Defendant appealed his conviction, arguing that his Sixth Amendment confrontation rights and right to self-representation were violated. The Ninth Circuit affirmed Defendant's judgment of conviction and sentence. *United States v. Marin-Torres*, 702 F. App'x 634–35 (9th Cir. 2017) (mem.). The Ninth Circuit held that "[t]he district court's protective order regarding discovery properly protected sensitive personnel information while giving the defense ample access to the necessary information" and that Defendant's "disruptive behavior justified the district court in revoking his self-representation and providing for representation by standby counsel." *Id.* at 634. Defendant filed a petition for writ of certiorari in the United States Supreme Court, and the Supreme Court denied certiorari. *Marin-Torres v. United States*, 138 S. Ct. 2588 (2018) (mem.).

On November 4, 2019, Defendant filed a motion for an extension of time to file a motion under 28 U.S.C. § 2255 for relief from his judgment of conviction. Def. Mot. Ext. Time, ECF 128. The Court construed the motion as a first motion for relief from his judgment of conviction under § 2255, found it timely, and allowed Defendant one year from November 4, 2019, to

withdraw or amend his § 2255 motion. Op. & Order 11, ECF 133. Defendant filed a new § 2255 motion on November 19, 2020.[2] The Court denies Defendant's motion.

## STANDARDS

Section 2255 permits "[a] prisoner in custody under sentence of a court established by Act of Congress" to move the sentencing court to vacate, set aside, or correct the sentence on the basis that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]

28 U.S.C. § 2255(a). To warrant relief, a defendant must demonstrate that an error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255).

In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which

---

[2] The Certificate of Service Defendant filed with the motion is dated October 26, 2020. The Government does not argue that the motion is untimely. Gov't Opp'n 2–3, ECF 138. As a result, the Court assumes, without finding, that Defendant's motion is timely.

7 – OPINION & ORDER

relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original) (quotation marks omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.' " *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

## DISCUSSION

Defendant argues that his Fifth, Sixth, and Fourteenth Amendment rights were violated when he was removed from the courtroom during his trial and was not permitted to represent himself. The Government argues that these issues were litigated on direct appeal and cannot be re-raised in this collateral attack. On the merits, the Government argues that under the circumstances the Court's removal of Defendant from the courtroom and order that standby counsel represent Defendant throughout the remainder of the trial did not violate Defendant's constitutional rights and that the remainder of Defendant's claims are frivolous.

**I.    Defendant's First § 2255 Motion**

Defendant's first § 2255 motion[3] alleges various acts of corruption, discrimination, and dishonesty of the Court and prosecutor during his first trial.[4] Def. Mot. Ext. Time ("First § 2255

---

[3] References throughout this Opinion to Defendant's first § 2255 motion refer to Defendant's motion for a one-year extension of time to file a motion under § 2255. Def. Mot. Ext. Time, ECF 128.

[4] Defendant's motion seeks relief under § 2255 from his judgment of conviction in this case but references a number of constitutional violations that he believes occurred in another case, *United States v. Marin-Torres*, No. 3:14-cr-00038, 2014 WL 7405653, at *2 (D. Or. Dec. 30, 2014). He refers to the trials in these cases as his first trial and his second trial. First § 2255 Mot. 3, 7. This Opinion addresses only the constitutional violations he alleges occurred in this case.

Mot.") 2. It also alleges that his conviction following his first trial represents "tyranny" in order to generate profit for the private prison industry. *Id.* Defendant alleges that this Court and the Ninth Circuit used Plaintiff's English language limitations as an excuse to deny him his right to self-representation under *Faretta v. California*, 422 U.S. 806 (1975). *Id*. at 3. Defendant also claims that he lacked access to discovery in violation of *McKaskle v. Wiggins*, 465 U.S. 168 (1984), and argues that he was denied access to gang experts during his "first trial." First § 2255 Mot. 3. Defendant argues that he was denied access to discovery because of his race. *Id*. at 4. Defendant argues that he did not know that his standby counsel spoke Spanish. *Id*. at 5. He also argues that he was unaware that the victim in his first trial had cooperated with the government. *Id*. at 6. In Defendant's first § 2255 motion, those arguments appear before the heading "In the Second Trial." *Id*. at 1–7. Thus, it appears that those arguments relate to his trial in Case No. 3:14-cr-00038-HZ, and not his trial in this case.

In the trial in this case, Defendant argues that the Court violated his Fifth, Sixth, and Fourteenth Amendment rights generally and his right to be present in the courtroom and to self-representation during his second trial. *Id*. at 7. Defendant argues that the Government relied on the testimony of an officer who Defendant had filed grievances against, was fired for making a false statement, and who had harassed Defendant. *Id*. at 8. Defendant referenced material evidence demonstrating that the officer Defendant was accused of assaulting had been fired for making false statements to the officer's supervisor. *Id.* at 7–8. Defendant also claims that the officer Defendant was accused of assaulting was later assaulted by an African American inmate because the officer had used racial slurs to address the inmate. *Id.* at 8. Defendant argues that the Court inappropriately excluded witnesses that Defendant intended to call at trial and makes blanket allegations of prosecutorial misconduct during sentencing. *Id*. at 8. He also argues that

9 – OPINION & ORDER

the judge and prosecutor lied and that his sentence in this case represents an attempt to generate profit for the private prison industry. *Id.*

## II.     Defendant's Amended § 2255 Motion

Defendant's amended § 2255 motion presents similar claims. The motion seeks an order vacating the conviction due to "prosecutorial misconduct corruption crimes from the judge and prosecutor who traitor [their] oath to offices and the constitution of the United States of America." Am. § 2255 Mot. 1, ECF 135. The motion argues that the Court racially discriminated against Defendant, who identifies as Afro Cuban, on the basis of his race and that the Court "rape[d]" Defendant's Fifth, Sixth, and Fourteenth Amendment rights to be present in the courtroom and to represent himself under *Faretta v. California*. *Id.* at 3. Defendant argues that those violations occurred when the Court excluded Defendant from the courtroom, refused to allow him to present impeachment evidence showing that the officer he was accused of assaulting had been fired for giving a false statement to his supervisor, and that Defendant and another inmate had made complaints against the officer for harassment and racial discrimination. *Id.* Defendant argues that it was the Court's plan from the start to exclude Defendant from the trial and let his standby counsel represent him during the trial. *Id.* at 31. His motion presents the facts as he views them and argues that his treatment was similar to the treatment of African Americans that sparked the racial protests in Portland, Oregon. *Id.* at 4–5. Defendant argues that the Court system in Portland is corrupt, committed crimes against him, and sold its soul to the devil. *Id.* at 5–6.

Defendant also argues that his prosecution was unfair because another inmate spit on the same officer and the other inmate was not charged with assault. *Id.* at 8. He argues that if the other inmate had been allowed to testify during Defendant's trial, the outcome of Defendant's

trial would have been different. *Id.* Defendant also argues that his right to access discovery was violated when a protective order precluded Defendant from having copies of the officer's personnel records in jail with him but allowed him to view the discovery with his standby counsel or investigator. *Id.* at 11.[5] Defendant argues that his Sixth Amendment rights were violated when the jury venire saw him in jail clothing before jury selection began. Def. Reply 43, ECF 142. He also argues that the Court ordered the U.S. Marshal to beat him. Reply 52.

### III.     Analysis

Defendant's allegations of constitutional violations stem from his arguments that the Court violated his right to be present during the proceedings and his right to self-representation. Specifically, Defendant argues that the Court violated those rights by ordering Defendant's standby counsel to represent Defendant when Defendant was removed from the courtroom after he engaged in a series of repeated outbursts that disrupted the proceedings. The Court finds that Defendant's motion, when read against the record, raises no right to relief under § 2255.

#### A.     Procedural Bar

The Government argues that the constitutional violations Defendant alleges were raised on direct appeal and are not cognizable in a § 2255 motion. The Government is correct. Issues raised and previously litigated on direct appeal are barred from re-litigation under the law of the case doctrine. *United States v. Jingles*, 702 F.3d 494, 498 (9th Cir. 2012) ("A collateral attack is the 'same case' as the direct appeal proceedings for purposes of the law of the case doctrine.");

---

[5] Defendant's amended § 2255 motion and reply also contain Defendant's grievances about his treatment during his incarceration and constitutional violations he alleges occurred during the course of his trial in No. 3:14-cr-00038-HZ. *See, e.g.*, Am. § 2255 Mot. 23–24, 30; Reply 34–37, 42. Because those arguments are irrelevant to the Court's determination of whether Defendant's self-representation and confrontation rights were violated in this case, the Court omits those arguments from its discussion.

11 – OPINION & ORDER

*United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) (holding that "[i]t is the law of this case that the government did not violate its *Brady* obligation" when *Brady* claims had been raised and rejected on direct appeal).

The Ninth Circuit's memorandum decision in this case demonstrates that the court considered and rejected Defendant's arguments. First, the court held that the protective order concerning discovery "properly protected sensitive personnel information while giving the defense ample access to the necessary information." *Marin-Torres*, 702 F. App'x at 634. Second, the circuit court considered and rejected Defendant's argument that his Sixth Amendment confrontation rights were violated when the Court removed him from the courtroom during jury selection. *Id.* And finally, the court rejected Defendant's argument that this Court violated his right to self-representation when the Court ordered Defendant's standby counsel to conduct the trial in Defendant's absence. *Id.* Because those arguments were litigated on direct appeal, they are barred from consideration in this § 2255 proceeding. Thus, the Court only considers Defendant's remaining arguments.

    B.    Hearing

Defendant's motion indicates that he does not want a hearing on this motion. Am. § 2255 Mot. 33. A defendant may waive their right to a hearing under § 2255. *See Sanders v. United States*, 373 U.S. 1, 18 (1963) (holding that by withholding a ground for relief under § 2255, a prisoner may waive their right to a hearing on that ground in a second application under § 2255); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.), *cert. denied*, 508 U.S. 979 (1993) (holding that a defendant may waive their right to file a § 2255 motion challenging their sentence). Because Defendant waived a hearing on his motion, and the Court can decide the

motion on the record, the Court finds that a hearing is unnecessary to resolve Defendant's claims.

      C.      Appearance Before Jury in Jail Uniform

Defendant argues that the Court violated his constitutional rights when it allowed him to appear before the jury in his jail uniform instead of street clothing. "A defendant 'may not be compelled to be tried before a jury in identifiable prison clothes.'" *Villafuerte v. Stewart*, 111 F.3d 616, 627–28 (9th Cir. 1997) (quoting *United States v. Rogers*, 769 F.2d 1418, 1420 (9th Cir. 1985)). However, when a defendant refuses to wear the civilian clothing provided, the defendant cannot establish that he was compelled to appear in jail clothing. *Id.* at 628.

Defendant appeared to in jail clothing during the hearing held on the first morning of his trial. Although he expressed his desire not to appear before the jury in jail clothing, when Defendant received civilian clothing to change into, he refused. Trial Tr. 22–24. Thus, he was not compelled to appear before the jury in jail clothing and his right to due process was not violated when he did so. *Villafuerte*, 111 F.3d at 628.

      D.      Fourteenth Amendment Violation

Defendant argues non-specifically that his Fourteenth Amendment rights were violated during his federal prosecution. The Fourteenth Amendment does not apply to actions by the federal government. *District of Columbia v. Carter*, 409 U.S. 418, 424 (1973). As a result, there is no legal basis for his claim of a Fourteenth Amendment violation.

      E.      Other Allegations

The remainder of Defendant's allegations are unsupported in fact or law. Defendant claims that the prosecutor engaged in prosecutorial misconduct, that the court lied, that the court and prosecutor engaged in tyranny, that the court discriminated against him on the basis of his

race, that the Court told the U.S. Marshals to assault Defendant, and that the Court and prosecutor conspired to unlawfully convict him of assaulting an officer in order to incarcerate him and generate profit for the private prison industry.[6] Defendant alleges no facts to support those claims. And, to the extent that Defendant failed to raise those claims on direct appeal, they are procedurally barred. *See Massaro v. United States*, 538 U.S. 500, 504, 506 (2003) (describing the general rule that claims not raised on direct appeal are barred by procedural default unless the defendant demonstrates good cause and prejudice and creating an exception for claims for ineffective assistance of counsel). As a result, Defendant has no cognizable § 2255 claim based on those allegations.

### IV. Certificate of Appealability

If a court denies a habeas petition, the court may issue a certificate of appealability if "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see* 28 U.S.C. § 2253(c)(1). Although the petitioner is not required to prove the merits of his case, they must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller–El*, 537 U.S. at 338 (quotation marks omitted). Defendant has failed to demonstrate even the absence of frivolity of his claims. As a result, the Court declines to issue a certificate of appealability.

---

[6] The Government argues that Defendant appears to raise an ineffective assistance of counsel claim by complaining about his standby counsel and investigator. Gov't Opp'n 5–7. The Court disagrees. Defendant's motion challenges only the Court's appointment of standby counsel and its removal of Defendant from the Courtroom. Defendant's motion contains no argument that his standby counsel's performance was deficient under *Strickland v. Washington*. As a result, the Court need not address whether Defendant's standby counsel's performance was deficient.

## CONCLUSION

Defendant's motion for extension of time to file a motion for relief from his judgment of conviction [128], which the Court previously construed as a first motion for relief from his judgment of conviction under § 2255, and his amended motion for relief under § 2255 [135] are DENIED. The Court declines to issue a Certificate of Appealability.

IT IS SO ORDERED.

DATED: September 23, 2021.

_____
MARCO A. HERNÁNDEZ
United States District Judge